UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CR-20426-MARTINEZ/SANCHEZ

UNITED STATES OF AMERICA

vs.

IRAZMAR CARBAJAL DE JESUS,

Defendant.

_____/

## FACTUAL PROFFER

The United States of America and Irazmar Carbajal de Jesus (the "Defendant") stipulate and agree that the following statements are true and accurate and serve as a sufficient factual basis for the Defendant's plea of guilty to conspiracy to commit an offense, that is, the operation of an unlicensed money transmitting business, all in violation of Title 18, United States Code, Sections 371 and 1960, as charged in Count 1 of the Indictment. Had this matter proceeded to trial, the Defendant stipulates and agrees that the United States would have proven the following facts beyond a reasonable doubt.

From in or around October 2022, and continuing through in or around April 2023, the Defendant conspired and agreed with others, including co-defendant Andre Arick Komarczyk ("Komarczyk"), to unlawfully operate an unlicensed money transmitting business that affected interstate and foreign commerce by collecting cash in the Dominican Republic and transferring, for a fee, those funds into and within the United States.

Specifically, on or about October 11, 2022, in a recorded WhatsApp call, Komarczyk called an FBI undercover agent ("UC-1"), who told Komarczyk that he had a friend who was a "sanctioned person" from the Venezuelan government who needed help moving cash in the

Dominican Republic to the United States. Komarczyk told UC-1 that he would send his partner to meet with UC-1 in the Dominican Republic.

On the same day, in a recorded WhatsApp call, the Defendant called UC-1 and represented that he was Komarczyk's associate. The Defendant used coded language to solicit information from UC-1 about moving funds into the United States, asking, among other things: (a) about UC-1's interest in having the Defendant and Komarczyk move funds to a U.S. bank account (translated from Spanish, a "boy who needs to be taken to school"); (b) how much money was involved (how "old" the "boy" was); (c) whether UC-1 needed documents to facilitate the movement of the funds to a U.S. bank account (making an "identity document" so that the "kid" can be sent to "school"); and (d) whether the money was in cash (the "street") or in a bank account (at "school").

The Defendant assured UC-1 during this call that he and Komarczyk had the requisite "structure" set up to move funds, including "documentation" and "all the legitimacy." The Defendant further proposed to UC-1 that they "enroll" a "child" weighing "one hundred pounds" first, and then "if they settle in well . . . we sign up the whole group," referring to an initial transfer of $100,000, with potential future transfers of up to $1 million total (all "ten kids" or the "whole group").

On or about November 2, 2022, the Defendant met with UC-1 in the Dominican Republic to discuss moving funds into the United States. On or about November 4, 2022, in a recorded WhatsApp call, the Defendant confirmed with UC-1 that the fee for transmission of the funds would be 20 percent, which was approximately $20,000 for the initial $100,000 transfer.

On or about November 17, 2022, the Defendant received approximately $99,500 in cash from a second FBI undercover agent ("UC-2") in the Dominican Republic.

In the following months, the Defendant and Komarczyk communicated together and individually with UC-1 several times regarding transmitting the cash to bank accounts in the United States. The Defendant and Komarczyk told UC-1 that they would transfer the funds into the United States using a bank account in Puerto Rico that had been opened in the name of Brixto Global Solutions Corp ("Brixto"), a Canadian company.

On or about January 9, 2023, UC-1 sent Komarczyk wire instructions for an account maintained by law enforcement at a bank in Fort Lauderdale, Florida (the "UC account"), and on or about January 16, 2023, UC-1 met with Komarczyk in Fort Lauderdale, Florida, where they discussed that the funds would be sent to the UC account in multiple transfers to minimize bank scrutiny.

On or about January 19, 2023, Komarczyk transferred approximately $18,500 from Brixto's account in Puerto Rico to the UC account in Fort Lauderdale, Florida. He later sent UC-1 a copy of a fake invoice dated January 5, 2023, that billed Brixto for the same sum to justify the transfer.

On or about February 1, 2023, the Defendant transferred an additional $7,000 from an account in his name to the UC account.

In or around February 2023, the Defendant, Komarczyk, and UC-1 exchanged messages and voice notes in a WhatsApp group chat discussing plans to transfer the balance of the funds to the UC account.

At all times described above, the Defendant, Komarczyk, and their related entities were not licensed by the State of Florida as a money services business or exempted from licensure, nor did the Defendant or Komarczyk register their business with the U.S. Treasury Department's Financial Crimes Enforcement Network ("FinCEN"). A person operating a "money services

3

business" that transfers more than $300 in a 12-month period without such authorization commits a third-degree or higher felony under Florida law.

The preceding statement is a summary and does not include all the facts known to the Defendant or the United States concerning this matter. The Defendant makes this statement knowingly and voluntarily and because he is in fact guilty of these violations.

MARGARET A. MOESER
CHIEF, MONEY LAUNDERING,
NARCOTICS AND FORFEITURE SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

Date: 3/24/26            By: _____
BARBARA Y. LEVY
LINDSAY HECK
JESSEE ALEXANDER-HOEPPNER
TRIAL ATTORNEYS

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

Date: 3/24/2026          By: _____
NALINA SOMBUNTHAM
ASSISTANT UNITED STATES ATTORNEY

Date: 3/24/2026          _____
FRANK J. GAVIRIA, ESQ.
ATTORNEY FOR DEFENDANT

Date: 3/24/2026          _____
IRAZMAR CARBAJAL DE JESUS
DEFENDANT

4